**2013 BNH 019   Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

---

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                           Bk. No. 13-11615-BAH
                                                                                  Chapter 13

Glen Jordan,
        Debtor

*Brad C. Davis*
*Seufert, Davis & Hunt, PLLC*
*59 Central Street*
*Franklin, NH*
*Attorney for Debtor*

*Timothy Britain*
*Cleveland, Waters & Bass, PA*
*Two Capitol Plaza, 5th Floor*
*Concord, NH*
*Attorney for Creditor Franklin Savings Bank*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Franklin Savings Bank ("FSB"), a creditor, filed a Motion to Dismiss (Doc. No. 10) (the "Motion") Glen Jordan's (the "Debtor") chapter 13 case.  The Debtor objected (Doc. No. 20) (the "Objection").  FSB alleges that the Debtor filed his chapter 13 petition in bad faith after FSB had obtained relief from the automatic stay in the Debtor's previously filed – and still pending – chapter 7 case, and the Debtor's sole purpose in filing the present chapter 13 case was to obtain a new automatic stay to delay and hinder FSB's foreclosure efforts.

The Court held a non-evidentiary hearing on the matter on August 30, 2013, heard oral argument from FSB and the Debtor, and took the matter under advisement.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The facts relevant to this matter are largely in the procedural history of the Debtor's two bankruptcy cases, which the parties do not dispute.  See Objection, ¶1.  Thus, the following information comes from the Court's docket, except where otherwise noted.

### A.     The Debtor's First (and Still Pending) Chapter 7 Case

On December 3, 2012, the Debtor filed a voluntary chapter 7 bankruptcy petition in this district (12-13668-BAH, the "Ch. 7 Bankruptcy" or the "First Case").  The Debtor's Schedules I and J in the Ch. 7 Bankruptcy listed average monthly income of $2,269.00 and average monthly expenses of $2,471.95, resulting in a monthly net *loss* of $202.95.

On February 25, 2013, FSB filed a motion for relief from stay in the Ch. 7 Bankruptcy, seeking relief from the automatic stay to pursue its remedies as a secured creditor with two mortgages[1] it held on the Debtor's property located at 64 Crescent Street, Hill, New Hampshire (the "Property").  On February 26, 2013, Edmond Ford, the chapter 7 trustee (the "Trustee") filed a notice of abandonment of the Property, noting that there was no equity in the Property for the chapter 7 estate.  The Debtor's statement of intention in the Ch. 7 Bankruptcy indicated his intent to reaffirm FSB's first mortgage on the property and redeem the property with regards to FSB's second mortgage.

---

[1] FSB's motion for relief in the Ch. 7 Bankruptcy (Doc. No. 18 in that case) stated that the Debtor was indebted to FSB on account of two notes, both secured by mortgages in the Property.  According to the motion for relief, the total amount due under both notes as of the Ch. 7 Bankruptcy petition date was $167,766.95, and the Property had a value of $150,000.  FSB stated that the Debtor had a total pre-petition arrearage of $894.78 and a total post-petition arrearage of $1,257.95

2

On March 19, 2013, the Debtor filed a timely objection to FSB's motion for relief from stay. The Debtor argued that "the amount of arrearage is small at best, and since the debtor has made payment, the debtor should be given a reasonable amount of time to get current on the mortgage as long as he continues to provide reasonable payments to [FSB]."

On March 27, 2013, the Court held a hearing on the motion for relief from stay in the Ch. 7 Bankruptcy. The Debtor alleged that FSB was not accepting payments from the Debtor. The Court noted that the Trustee had already abandoned the Property, and thus the automatic stay no longer applied to the Property itself. The Court further noted that the deadline to object to the Debtor's discharge in the Ch. 7 Bankruptcy had already passed, and it appeared the only reason the Debtor's discharge had not entered was that the Debtor had not yet filed a financial management course certificate. The Court explained that once the discharge enters, the automatic stay terminates as to the Debtor. The Court granted the motion for relief from stay, subject to the 14-day stay of Fed. R. Bankr. P. 4001(a)(3), reasoning that in that scenario, the parties would be in basically the same position as if the Debtor had completed the financial management course and received a discharge.

On April 10, 2013, the Debtor filed a motion to convert the Ch. 7 Bankruptcy to chapter 13. The motion to convert stated that the Debtor had "debts owed to the Town of Hill, NH and arrearages on the second mortgage secured by [the Property], which he will cure through a chapter 13 plan." By the Debtor's own admission (in the motion to convert), he was eligible to be a debtor under chapter 13. The Court granted the motion to convert the same day it was filed.

According to FSB's Motion, by notice dated April 17, 2013, FSB scheduled a foreclosure sale of the Property for May 17, 2013. Motion, ¶11. On April 18, 2013, the Debtor filed a motion requesting that the Court reconsider its March 27, 2013 order granting FSB relief from

3

the automatic stay. As grounds, the Debtor argued that the conversion to chapter 13 was "a new circumstance that was not present at the hearing on the motion for relief from the automatic stay and therefore a motion to reconsider [was] proper under the circumstances." The Debtor further argued that:

> The alternative to the debtor is to convert back to Chapter 7, accept his discharge, and then to re-file under Chapter 13 for a new stay to be imposed. [It] would be in the interest of judicial economy, and it would seem less prejudicial and more economical on all parties for the Court to reconsider its order granting relief as to FSB. The bank will be adequately protected in the Chapter 13 proceeding and the arrearages paid in full under the plan.

On April 19, 2013, FSB filed an objection to the Debtor's motion to reconsider.

The Court treated the motion to reconsider as a motion for relief from judgment under Fed. R. Civ. P. 60(b), as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024. On April 26, 2013, the Court entered an order denying the Debtor's motion to reconsider, stating, in relevant part:

> The conversion of the case from chapter 7 to chapter 13 on April 10, 2013, had no effect on the Order or the status of the automatic stay. See Masterson v. Berkeley Federal Bank & Trust (In re Masterson), 189 B.R. 250, 252 (Bankr. D.R.I. 1995) (internal citations omitted). Moreover, the Debtor's argument that the conversion is a "new circumstance that was not present at the hearing on the motion" and which justifies reconsideration is unavailing. The conversion of the case – upon the *Debtor's* motion – does not justify disturbing the Order, and doing so would render significant prejudice to the creditor. Similarly, the Debtor's argument that the Debtor could possibly pursue an alternative path of attempting to "convert [his case] back to a chapter 7 case, accept his discharge, and then . . . re-file under Chapter 13 for a new stay to be imposed" does not present a basis for relief under Rule 60(b).

Notably, other than attempting to use the conversion to chapter 13 as a "new circumstance" to vacate the order granting relief from the stay, the Debtor never filed a motion to reimpose the automatic stay after converting the First Case to a chapter 13 case, nor did he file a plan that would have supported any such effort. Instead, on May 6, 2013, the Debtor filed a notice of voluntary conversion to chapter 7. The notice stated that because "the debtor's home

4

loan creditor is pursuing foreclosure and has relief from the automatic stay, a Chapter 13 plan is not feasible." On the same day, FSB filed an objection to the Debtor's notice of conversion. Essentially, FSB argued that the Debtor's conversion to chapter 7 was an abuse of process, given the Debtor's previously stated intention of obtaining the chapter 7 discharge and immediately filing a subsequent chapter 13 to obtain the benefit of a new automatic stay. However, since a debtor may, by notice, convert a chapter 13 case to a chapter 7 case at any time, the Court entered an order overruling FSB's objection as moot, because the Debtor's notice of conversion had already effectuated the conversion. See 11 U.S.C. § 1307(a).

On June 20, 2013, the Court entered a discharge under § 727 of the Bankruptcy Code in the Ch. 7 Bankruptcy. The Ch. 7 Bankruptcy remains open and pending, because the Trustee is administering the estate. Specifically, the Trustee has sold a parcel of real property the Debtor owned in Franklin, New Hampshire. See Doc. No. 94, 12-13668-BAH. That property appeared to be a rental property.

      **B.**     **Foreclosure Sale**

As noted above, after obtaining relief from the stay, FSB rescheduled its foreclosure sale to occur on May 17. After the Debtor's conversion of the First Case back to chapter 7, but before the entry of the chapter 7 discharge, the Debtor filed an action in Merrimack County Superior Court seeking to enjoin the foreclosure sale. That court issued an ex-parte temporary restraining order on May 13, 2013. Motion, ¶17. In light of the Superior Court's order, FSB continued its foreclosure sale to June 3, 2013. Motion, ¶18. "Following a [further] hearing on May 24, 2013, by order dated May 30…, the… Superior Court denied further injunctive relief, permitting the June 3, 2013 foreclosure sale to go forward." Motion, ¶19.

5

>FSB further asserts:
>
>On June 3, 2013, the Bank conducted a foreclosure auction on the Mortgaged Premises. The Bank was the high bidder with a bid of $105,000.00 which it credited to the Debtor's obligations under Note 1 and Note 2. The foreclosure deed is dated June 21, 2013 and *was recorded* in the Merrimack Registry of Deeds *on June 25, 2013* at Book 3394 Page 1046 at 3:29 p.m.

Motion, ¶20 (emphasis added).

### C. The Debtor's Present Chapter 13 Case

On June 24, 2013, three weeks after the foreclosure auction and one day before FSB recorded the foreclosure deed, the Debtor filed the present voluntary chapter 13 bankruptcy petition (the "Ch. 13 Bankruptcy"). According to FSB, it did not learn of the Ch. 13 Bankruptcy until three days later, on June 27, 2013, after it had already recorded the foreclosure deed. Motion, ¶23.

The Debtor's Schedules I and J in the Ch. 13 Bankruptcy list average monthly income of $2,066.67 and average monthly expenses of $1,599.95, resulting in positive monthly net income of $466.67. The Debtor's income appears to have dropped due to his loss of $950.00 of monthly rental income, a loss which was partially offset by an increase in his employment income. The Debtor's expenses have decreased by a total of $872.00 per month, without explanation. Many of the decreased expenses do not appear to have any relation to the fact that the Debtor no longer owns his rental property in Franklin, New Hampshire.[2]

---

[2] The Debtor's expenses decreased as follows:

| Expense (line) | Ch. 7 Amount | Ch. 13 Amount | (decrease)/increase |
|---|---|---|---|
| Electricity and heating fuel (2a) | $175.00 | $100.00 | ($75.00) |
| Food (4) | $400.00 | $200.00 | ($200.00) |
| Transportation (8) | $500.00 | $200.00 | ($300.00) |
| Taxes (12) | $697.00 | $400.00[2] | ($297.00) |
| | | **Net decrease:** | **($872.00)** |

6

The Debtor did not file a chapter 13 plan (Doc. No. 8) (the "Plan) in this case until July 8, 2013. The Plan proposes to make 36 monthly payments of $326.00, for a total of $11,736.00 over the life of the Plan. The Plan proposes to pay the chapter 13 trustee's fees and expenses in the amount of $1,174.00; a "priority"[3] claim to the Town of Hill, New Hampshire on account of property taxes in the amount of $7,721.81; and a pre-petition arrearage claim on account of FSB's second mortgage on the Property in the amount of $2,868.30. The Plan states that there are no general unsecured creditors, likely due to the Debtor having received a chapter 7 discharge four days before filing the Ch. 13 Bankruptcy. According to the Plan, FSB's first mortgage is current and the Debtor will continue to pay the first mortgage directly, outside the Plan.

### D.  The Parties' Positions

Essentially, FSB argues that the Court should dismiss the Ch. 13 Bankruptcy as being filed in bad faith on the following grounds[4]:

1) The Debtor is attempting to use a combination of chapter 7 and chapter 13 to accomplish what the Debtor could not have accomplished in either chapter, standing alone;
2) The Debtor's only purpose in filing is to defeat state court litigation (i.e., FSB's foreclosure action); and
3) The Debtor does not intend to develop a sincere, feasible chapter 13 plan, but filed the Ch. 13 Bankruptcy "solely because he believes it will result in a new automatic stay that will… further delay and hinder" FSB.

The Debtor responded that FSB had previously refused to accept his payments when he attempted to pay his mortgages, and thus he filed the Ch. 13 Bankruptcy and proposed a plan that would pay all of his creditors in full, including FSB.

---

[3] While the Plan classifies the claim as a "priority" claim, the claim appears to be for secured real estate taxes, at least in part. See Court's Claim Register, Claim No. 2-1.
[4] FSB also argues that the Court's holding in In re Beeman, 225 B.R. 519 (Bankr. D.N.H. 1999) should not apply in this case. Because the Court's ruling on the issue of bad faith in this case is dispositive, the Court will not address this argument.

7

**III. DISCUSSION**

    **A.     Dismissal For Bad Faith Under 11 U.S.C. § 1307(c)**

"Section 1307(c) provides that on request by a party in interest, after notice and a hearing, the court may dismiss a case under Chapter 13 or convert the case to a Chapter 7 case, whichever is in the best interests of the creditors and the estate, for cause." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210-11 (1st Cir. B.A.P. 2005).  While "bad faith" is not an enumerated "cause" under § 1307(c)(1)-(11), "it is well established that lack of good faith (i.e., bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case." Id. at 211 (citations omitted).  Under § 1307(c), the objecting creditor has the burden of proving a lack of good faith on the part of the debtor.  Id.

Bankruptcy courts in the First Circuit apply a totality of the circumstances test to determine whether a debtor has filed a chapter 13 in good faith (or bad faith).  Id.  Courts typically consider the following factors in making such a determination:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

Id. at 212, citing In re Dicey, 312 B.R. 456, 549 (Bankr. D.N.H. 2004).

Although this Court and others have provided lists of relevant factors, the inquiry is inherently fact sensitive, done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities.  See Sullivan, 326 B.R. at 212 (citations omitted).  "The hallmark of the totality of the circumstances test is that the factors to be

8

considered may vary in each case." Id.  As this Court has noted before, the requirement of good faith is ambiguous.  Dicey, 312 B.R. at 459.  Bad faith generally requires something "more than a mistake or inadvertence"; it requires "some form of deception."  In re Valentine, 2009 BNH 25 (Bankr. D.N.H. 2009) (citations omitted).  A debtor's "mere carelessness or oversight" would probably be insufficient, on its own, to show bad faith.  See Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (1st Cir. 2005).  However, "[a] bankruptcy court is entitled to insist upon filings and representations made in utmost good faith."  Id.

The unique circumstances of a "chapter 20" case warrant a careful inquiry by the Court. See In re Dolinak, 497 B.R. 15, 23 (Bankr. D.N.H. 2013).

> 1. The Timing and Circumstances of the Debtor's Two Cases Indicate an Attempt to Manipulate the Bankruptcy System

The proximity in time between the Debtor's chapter 7 and chapter 13 cases is a factor relevant to a determination of good faith.  See Keach v. Boyajian (In re Keach), 243 B.R. 851, 854 at n.7 (B.A.P. 1st Cir. 2000) (listing eleven non-exclusive factors the bankruptcy court considered in evaluating good faith).  Here, the Debtor filed the Ch. 13 Bankruptcy approximately only seven months after filing the Ch. 7 Bankruptcy, and while the Ch. 7 Bankruptcy was still open and pending.[5]  In one bankruptcy court's view, "commencement of a Chapter 13 case during the pendency of a Chapter 7 case may indicate exploitation of the bankruptcy process, particularly when the Chapter 13 filing precedes the Chapter 7 discharge and impedes a secured creditor's ability to proceed with its state court rights after obtaining relief from stay in the Chapter 7 case."  In re Hodurski, 156 B.R. 353, 356 (Bankr. D. Mass. 1993). The bankruptcy court in Hodurski (and some other courts) emphasized the filing of a chapter 13 case *prior to the entry of a discharge* in the still pending chapter 7 case. See id.  However, this

---

[5] See Section B, below.

9

Court does not find the entry of discharge to be dispositive, assuming the other facts of the case indicate the Debtor's subsequent chapter 13 impedes a secured creditor's ability to proceed with its state court rights *after obtaining relief from stay in the chapter 7 case*.  Cf. Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 19.1, at ¶¶ 3-9, Sec. Rev. Mar. 6, 2009, www.Ch13online.com (discussing the significance of the entry of the chapter 7 discharge before proceeding in a subsequent chapter 13 in the context of eligibility).

The record reflects that the Debtor undertook his successive filings in an effort to bend the bankruptcy system to his advantage.  After FSB obtained relief from the automatic stay in the First Case,[6] the Debtor converted the case to chapter 13.  Eight days later – and one day after FSB scheduled a foreclosure sale of the Property – the Debtor asked the Court to reconsider[7] the order granting FSB relief.  In his motion, the Debtor signaled his intent to "convert back to Chapter 7, accept his discharge, and then to re-file under Chapter 13 for a new stay to be imposed" if his motion was unsuccessful.  When the Debtor's attempt was unsuccessful, he converted the First Case back to chapter 7, stating that because FSB "is pursuing foreclosure and has relief from the automatic stay, a Chapter 13 plan is not feasible."  However, a chapter 13 plan was not necessarily *unfeasible*.  It simply would not have accomplished the Debtor's goal of *ipso facto* reimposing the automatic stay on FSB, because converting the First Case to chapter 13 would not, by itself, restore the automatic stay.

---

[6] The Court notes that the Debtor could have converted the First Case to chapter 13 *prior to the hearing* on FSB's motion for relief from stay.  Had he done so, the outcome might have been different, due to the fact that the standard for granting (or denying) relief from stay is different between chapter 7 and chapter 13.  Because chapter 7 cannot include a reorganization, relief from stay cannot be denied on the basis that property is necessary for a successful reorganization.  In other words, a debtor cannot argue that he will "cure and maintain" a secured loan in chapter 7 as grounds to deny a creditor relief from stay.

To this point, nothing in the record indicates that the Debtor could not have filed a chapter 13 in the first instance.  By the Debtor's own admission (in the motion to convert), he was eligible to be a debtor under chapter 13.  While the Debtor's Schedule J in the First Case did not show any monthly net income, that fact alone does not preclude a debtor from filing a chapter 13 bankruptcy.

[7] The Court treated the motion to reconsider as a motion for relief from judgment under Fed. R. Civ. P. 60(b).

10

Had the Debtor filed a chapter 13 plan in the First Case, he could have moved to reimpose the stay.  See In re Lord, 295 B.R. 16, 20 (Bankr. E.D.N.Y. 2003).  However, that relief would have required notice and a hearing, and would not have been assured, let alone automatic. See id. ("Had the debtor converted the Chapter 7 case to a Chapter 13, he would have had to seek to reimpose the stay, which is by no means automatically granted upon conversion.").  Instead, having failed in his first attempt to restore the stay, and having then failed to obtain more than a short term injunction in state court, the Debtor filed the Ch. 13 Bankruptcy, assuring that he would get another injunction simply by filing.  Regardless of the fact that the Debtor filed the Ch. 13 Bankruptcy after the entry of his discharge in the Ch. 7 Bankruptcy, the filing halted FSB's ability to proceed with its mortgage foreclosure after already obtaining relief from stay in the First Case, and after the state court dissolved the temporary restraining order.  This sequence of events had the effect of tainting the Ch. 13 Bankruptcy.  As the bankruptcy court in Lord found, on similar facts: "By filing the Chapter 13 petition, the debtor was clearly attempting to obtain the benefit of the automatic stay which had been terminated in the Chapter 7 case." Id.

    2.    FSB's Argument that the Debtor Seeks to Accomplish Through Chapter 20 a Result That Would Not Have Been Possible in Either Chapter 7 or Chapter 13 Standing Alone is not Fully Developed

FSB also argues that the Debtor's "planned course of action in the [Ch. 13 Bankruptcy] 'for all practical purposes constitute use of the bankruptcy remedies, Chapter 7 and Chapter 13, to accomplish by indirection what cannot be accomplished directly.'"  FSB cites to several cases[8] that the Court struggled to find relevant to the facts of this case.  To the extent that FSB is arguing that the Ch. 13 Bankruptcy created a new stay automatically, a result that the Debtor

---

[8] In re Sanchez, 20 B.R. 431, 423 (Bankr. W.D. Tex. 1982) (citing In re Diego, 6 B.R. 468, 469 (Bankr. N.D. Cal.1980)), and In re Taylor, 261 B.R. 877, 884 (Bankr. E.D. Va 2001).

could not accomplish by any means in the First Case after FSB was granted relief from stay, this argument is accepted above.

> 3. While It is Not Apparent that the Debtor's Sole Purpose in Filing is to Defeat FSB's Foreclosure, the Totality of the Circumstances Indicate that he Filed this Case in Bad Faith

FSB further argues that the Debtor's only purpose in filing the Ch. 13 Bankruptcy is to defeat FSB's foreclosure action. FSB cites to In re Fleury, 294 B.R. 1, 8 (Bankr. D. Mass 2003), for the principle that filing a bankruptcy "solely to thwart a creditor['s] claim rather than making a honest effort to pay debts is bad faith." FSB further cites to In re Ortiz, 200 B.R. 485, 491 (D.P.R. 1996), for the principle that filing a bankruptcy "only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation" constitutes bad faith.

The present case is distinguishable from both Fleury and Ortiz, although it still appears that the Debtor filed the case in bad faith. In Fleury, the debtor excluded a creditor's claim from one petition, transferred over $350,000 in assets to family and friends between her cases, and had very few assets and little income to fund a plan or pay the creditor's claim in full. Fleury, 294 B.R. at 8. In Ortiz, the Debtors had filed three chapter 13 cases and either filed insufficient plans or failed to confirm plans within a reasonable period of time. Ortiz, 200 B.R. at 489-90. The Debtor's conduct in this case is not as egregious as the debtors in Fleury and Ortiz. Here, the Debtor is clearly seeking to impede the consummation of FSB's foreclosure, but has proposed a plan that at least facially pays FSB's second mortgage arrearage and a priority tax claim to the Town of Hill, while proposing to deal with FSB's first mortgage outside of the plan. However, based upon the totality of the circumstances, particularly the timing and the circumstances of the

First Case, the state court litigation, and this case, it appears that the Debtor filed the Ch. 13 Bankruptcy in bad faith. His case should be dismissed.

### B. Propriety of Simultaneous Chapter 7 and Chapter 13 Cases

This case involves a scenario that the Court rarely, if ever, sees: a single debtor with both a chapter 7 case and a chapter 13 case pending at the same time in the same court.[9] Despite the apparent rarity of that scenario, there is a significant amount of case law on the propriety of what some courts call a "*simultaneous*[10] chapter 20." A "respectable number of courts" have held that an individual is ineligible to be a chapter 13 debtor if another bankruptcy case is pending for the same debtor. Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 19.1, at ¶ 1, Sec. Rev. Mar. 6, 2009, www.Ch13online.com. However, a roughly equal number of courts have held that the Bankruptcy Code does not bar, per se, an individual from filing a chapter 13 case while he or she has a chapter 7 case or another chapter 13 case pending at the same time. Id.

Lord adopts the view that simultaneous chapter 20 cases are per se prohibited. The bankruptcy court in Lord reasoned that "a debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code." Id. at 18, quoting In re Turner, 207 B.R. 373, 378 (2d Cir. B.A.P. 1997). "Under this view, a debtor is barred from filing a Chapter 13 petition before the Chapter 7 case is closed, even if the debtor has already received a discharge in the Chapter 7 case." Id.

In re Arellano, 363 B.R. 611 (Bankr. D.N.M. 2007) adopts the opposing view, that there is no per se prohibition on simultaneous chapter 20 cases. On facts virtually identical to the

---

[9] The Ch. 7 Bankruptcy was originally pending before Judge Deasy. However, the case was reassigned to the undersigned judge on March 13, 2013, well before the Debtor filed the Ch. 13 Bankruptcy. Judge Deasy heard and determined FSB's motion for relief from stay in the Ch. 7 Bankruptcy because the motion was pending and scheduled for hearing at the time of the reassignment.

[10] The term "simultaneous" distinguishes the scenario from a typical chapter 20 case, which at least one court refers to as a "serial chapter 20." Lord, 295 B.R. at 18 n.1.

present case, the bankruptcy court in Arellano found that there is no prohibition on simultaneous chapter 20 cases, at least where the two cases are not seeking to discharge the same debts. See id. at 613-14.  The court in Arellano deferred the issue of bad faith until confirmation, apparently because the issue was not immediately in front of the court. [11]  See id. at 614.

The Court does not take a position on the propriety of simultaneous chapter 20 cases at this time. The facts and circumstances of the present case support a finding of bad faith under § 1307(c) such that the Court need not determine whether simultaneous chapter 20 cases are barred per se.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that the Debtor filed his case in bad faith.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order, consistent with this opinion, dismissing the Ch. 13 Bankruptcy.

ENTERED at Manchester, New Hampshire.

Date:   December 26, 2013            /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge

---

[11] Arellano was heard on a unique procedural posture.  The bankruptcy court *sua sponte* raised the question of whether the subsequent chapter 13 case should be dismissed because it was filed before the debtors' previous chapter 7 case was closed. Arellano, 363 B.R. at 611.